**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO. EP-24-CV-160-KC** |
| | § | |
| **AMITY ONE DEBT RELIEF and** | § | |
| **ARIYO MACKAY,** | § | |
| | § | |
| **Defendants.** | § | |

A true copy of the original, I certify.
Clerk, U.S. District Court
By_____
    Belinda Gamez
   December 18, 2024        Deputy

## <u>ORDER</u>

On this day, the Court considered Plaintiff's Motion to Correct Caption on Order Granting Plaintiff's Motion for Default Judgment ("Motion"), ECF No. 12. Plaintiff states that the Court's October 24, 2024, Order Granting in Part and Denying in Part Plaintiff's Motion for Default Judgment incorrectly lists Plaintiff as "Joseph" as opposed to "Joshua" Cacho in the case caption and conclusion. Mot. 1; *see also* Oct. 24, 2024, Order 1, 19, ECF No. 11.

"The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Accordingly, Plaintiff's Motion, ECF No. 12, is **GRANTED**. The Court corrects the clerical errors in its prior Order and amends the judgment as follows:

Default Judgment is **ENTERED** in favor of Plaintiff, Joshua Cacho, and against Defendants Amity One Debt Relief and Ariyo Mackay, jointly and severally. Defendants **SHALL PAY** Plaintiff:

a. $5,500.00 in statutory damages for eleven violations of 47 U.S.C. § 227(b) pursuant to § 227(b)(3)(B);

b. $7,500.00 in statutory damages for fifteen violations of 47 U.S.C. § 227(c) pursuant to § 227(c)(5)(B);

c. $75,000.00 in damages for fifteen violations of Section 302.101 of the Texas Business and Commerce Code pursuant to Section 302.302 of the Texas Business and Commerce Code; and

d. $405.00 in costs of court

In total, the Court **GRANTS** default judgment in favor of Plaintiff and against Defendants in the amount of $88,405.00.

**IT IS FURTHER ORDERED** that all monetary judgments awarded herein shall accrue post-judgment interest at the legal rate prescribed by 28 U.S.C. § 1961, calculated from October 24, 2024, which is the date of the Court's prior Order, ECF No. 11.

The case remains closed.

**SO ORDERED.**

SIGNED this 21st day of November, 2024.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSEPH CACHO, | § | |
| | § | A true copy of the original, I certify. Clerk, U.S. District Court |
| Plaintiff, | § | By _____ Belinda Gamez _____ |
| | § | December 18, 2024    Deputy |
| v. | § | CAUSE NO. EP-24-CV-160-KC |
| | § | |
| AMITY ONE DEBT RELIEF and | § | |
| ARIYO MACKAY | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day, the Court considered Plaintiff's Motion for Default Judgment ("Motion"), ECF No. 10. For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

This case involves alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Section 302.101 of the Texas Business and Commerce Code ("TBCC"). Plaintiff, who lives in El Paso, Texas, alleges that Defendant Amity One Debt Relief ("Amity") called him on at least fifteen occasions despite Plaintiff registering his personal cell number on the National Do-Not-Call Registry more than thirty-one days prior. Compl. ¶¶ 30, 38, 40–49, ECF No. 1.

Nine of these calls, which began in late December 2023, *id.* ¶ 38, were "prerecorded solicitation phone calls," *Id.* ¶ 33. The prerecorded calls opened with a common prerecorded message stating that Plaintiff was entitled to "$50,000 in a pre-approved business loan." *Id.* ¶¶ 38–41. The prerecorded calls then gave Plaintiff the option of speaking with a live agent or indicating that he did not wish to be called again. *Id.* ¶¶ 38–40. Plaintiff indicated that he

wished to be removed from the caller's calling list by pressing the relevant number on his phone's keypad at the end of the message for the first two of these calls.  *Id.*  Plaintiff then received another eight further calls.  *Id.* ¶ 41.  On the eleventh call, Plaintiff selected an option to speak to a "live agent."  *Id.* ¶ 43.  From speaking with this live agent, Plaintiff was eventually able to identify Amity as the source of the phone calls.  *Id.* ¶¶ 43–46.  Plaintiff subsequently informed the live agent that he did not wish to receive any further calls.  *Id.* ¶ 46.  Plaintiff still received four more calls from the same and other live agents and repeated each time that he did not wish to be called again.  *Id.* ¶¶ 46–49.

Plaintiff filed his Complaint on May 16, 2024, and named both Amity and Ariyo Mackay, Amity's Chief Executive Officer ("CEO"), as Defendants.  *Id.* ¶¶ 2–3.  Plaintiff properly served Amity on May 21, 2024, Summons Returned Executed, ECF No. 6, and served Mackay on June 17, 2024.  Summons Returned Executed, ECF No. 7.  Both Defendants did not appear.  Plaintiff filed a Motion for Clerk's Entry of Default, ECF No. 8, against both Defendants on July 9, 2024.  The Clerk entered default on July 10, 2024, Clerk's Entry Default, ECF No. 9, and this Motion followed on July 17.

## II.    DISCUSSION

### A.    Standard

The clerk of the court shall enter default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  After the clerk enters default, a party may move for a default judgment.  *See* Fed. R. Civ. P. 55(b); *see also N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

2

Courts conduct a three-step analysis to determine whether default judgment should be entered. *See CoreStates Constr. Servs., Inc. v. Red Beard Excavators, LLC*, No. 1:22-cv-898-RP, 2024 WL 1595696, at *2 (W.D. Tex. Feb. 29, 2024) (citations omitted); *Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). First, the court determines whether entry of default judgment is procedurally warranted. *Alvarado*, 444 F. Supp. 3d at 752 (citing *Lindsey*, 161 F.3d at 893). Second, the court assesses whether judgment is substantively warranted—that is, "whether there is a sufficient basis in the pleadings for judgment." *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). In assessing whether the complaint contains a sufficient basis for a default judgment, the court applies the standard governing the sufficiency of a complaint under Federal Rule of Civil Procedure 8. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And third, the court decides what relief the plaintiff should receive, if any. *Alvarado*, 444 F. Supp. 3d at 752 (citing *Ins. Co. of the W. v. H&G Contractors, Inc.*, No. 10-cv-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011)).

**B.     Analysis**

**1.     Default Judgment is procedurally warranted.**

Courts focus on six factors when determining whether the entry of default judgment is procedurally warranted. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citing *Lindsey*, 161 F.3d at 893). These factors include: 1) whether there are material issues of fact at issue; 2) whether there has been substantial prejudice; 3) whether the grounds for default are clearly established; 4) whether the default was

caused by good faith mistake or excusable neglect; 5) the harshness of default judgment; 6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Lindsey*, 161 F.3d at 893.

Each of these six factors support default judgment in this instance. First, Defendants did not file any responsive pleading, so no material facts are in dispute. Second, Defendants' failure to appear in this matter has caused substantial prejudice to Plaintiff's ability to prosecute his case and "bring[s] the adversary process to a halt." *See Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *3 (citations omitted). Third, the grounds for default are clearly established for both Defendants, as neither has ever responded at any stage of this litigation. *A.P. Moller - Maersk A/S v. Safewater Lines (I) Pvt., Ltd.*, 784 F. App'x 221, 228 (5th Cir. 2019). Fourth, there is no evidence to suggest that Defendants' silence is due to "good faith error or excusable error or neglect." *Lindsey*, 161 F.3d at 893. Fifth, default judgment is not overly harsh given that Plaintiff seeks only the relief to which he is entitled under the applicable statutes and Defendants have failed to appear. *See Holladay*, 2015 WL 5916440, at *2 ("Plaintiff only seeks the relief to which she is entitled under the FLSA, mitigating the harshness of a default judgment against Defendants."); *Alvarado*, 444 F. Supp. 3d at 753 (reasoning that defendant's "complete failure to respond mitigates the harshness of a default judgment" (cleaned up)). Finally, no facts or evidence suggest that either Defendant would be able to demonstrate the good cause necessary for the Court to set aside default judgment.[1] *See Holladay*, 2015 WL 5916440, at *2.

Thus, default judgment is procedurally warranted.

---

[1] However, this is not to predetermine any such request. Defendants may file a motion to set aside default and vacate default judgment, and the Court will consider it in the ordinary course.

## 2. Plaintiff's pleading provides a sufficient basis for default judgment against both Defendants.

### a. Plaintiff has demonstrated that Defendant Mackay can be held personally liable.

Plaintiff has brought suit against Amity's CEO—Ariyo Mackay—in addition to Amity itself. Plaintiff therefore needs to demonstrate that Mackay can be held personally liable for Amity's alleged violations of the TCPA and TBCC for default judgment to be entered against him.

"As a general matter, if a corporation is found to have violated a federal statute, its officers will not be personally liable solely because of their status as officers." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 897 (W.D. Tex. 2001) (citing *United States v. Sexton Cove Estates, Inc.*, 526 F.2d 1293, 1300 (5th Cir. 1976)). But courts have held that a corporate officer can be personally liable under the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute, and [were] not merely tangentially involved [in the alleged conduct]." *Id.* at 898; *see also Williams v. Schanck*, No. 15-cv-1434, 2019 WL 4246570, at *4–5 (N.D. Ala. Sept. 6, 2019) (applying *Blastfax* to reject company founder's argument that corporate shield doctrine precluded court's exercise of jurisdiction over him); *Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F. Supp. 3d 973, 983 (N.D. Ill. 2018) ("The *American Blastfax* standard has been adopted across the country."), *aff'd,* 950 F.3d 959 (7th Cir. 2020). *But see City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160–61 (3d Cir. 2018) (raising doubts about the availability of common-law personal-participation liability against corporate officers under the TCPA—as developed in *Blastfax*—but affirming the trial court's judgment for lack of reversible error in the instructions given to the jury). A corporate officer is thus personally liable for violations of the

5

TCPA when they are the "'guiding spirits' and the 'central figures' behind the TCPA violations." *Blastfax*, 164 F. Supp. 2d at 898; *see Doyle v. JTT Funding, Inc.*, No. 18-cv-6145, 2019 WL 13037025, at *9 (C.D. Cal. Dec. 2, 2019). The Court finds *Blastfax* and similar decisions persuasive and applies them here.

Plaintiff makes several allegations regarding Mackay's role in Amity's alleged "dialing campaign." Compl. ¶¶ 61–66. Plaintiff alleges that Mackay "purchased the technology and equipment to be able to make calls with a prerecorded message." *Id.* ¶ 62. And that Mackay "ordered that the equipment he purchased be used to make the prerecorded message phone calls," "wrote the script that was used for the prerecorded message that was sent to Plaintiff," and "chose the individual to record the script he wrote and was present during the recording of the message." *Id.* ¶¶ 63–64. Finally, Plaintiff alleges that Mackay "initiated the dialing campaign and directed how the calls were to be placed, ie., using the prerecorded message system, which cities and states to target, and how many calls to place per minute." *Id.* ¶ 65.

Taken together, these facts sufficiently allege that Mackay was himself personally involved and took a central role in the alleged violations committed by Amity's employees. *See Callier v. Tip Top Cap. Inc.*, No. 3:23-cv-437-KC, 2024 WL 1237052, at *7 (W.D. Tex. Mar. 22, 2024) (holding that corporation's managing partner was personally liable for TCPA violations as they were "directly and personally involved in" the alleged violations), *adopted in pertinent part*, 2024 WL 1637535 (Apr. 16, 2024); *Salaiz v. Pelican Inv. Holdings Grp., LLC*, No. 3:22-cv-29-FM, 2022 WL 17813209, at *4 (W.D. Tex. Nov. 10, 2022) (denying defendant's motion to dismiss and holding they could potentially be held personally liable as plaintiff alleged he "planned, initiated, and directed the robocalls, approved the contracts with telemarketers and the scripts they use, and paid the telemarketers from bank accounts he owns and control");

*Cunningham v. Crosby Billing Servs., Corp.*, No. 18-cv-43, 2018 WL 6424792, at *6 (E.D. Tex. Oct. 14, 2018) (determining that one of two individual corporate officer defendants could be held personally liable under TCPA when plaintiff sufficiently alleged they had "direct, personal participation in or personally authorized the conduct found to have violated the [TCPA]" (alteration in original)), *adopted*, 2018 WL 6424695 (Dec. 5, 2018).  In other words, Mackay's alleged level of involvement goes far beyond that of someone merely "sit[ting] on [a company's] board while the company violated the TCPA."  *Blastfax*, 164 F. Supp. 2d at 897.  In sum, because Plaintiff's allegations establish that Mackay "actively oversaw and directed" "the conduct that violated the TCPA," he can be held personally liable.  *Id.*

Plaintiff's allegations establish Mackay's personal liability for violations of both the TCPA and TBCC.  As this Court has explained previously, when a corporate officer is personally liable for violations of the TCPA, there is "no basis on which to find that Plaintiff's allegations regarding [Defendant's] personal oversight and direction of the phone calls at issue should not apply equally to all of Plaintiff's claims."  *See Callier*, 2024 WL 1637535, at *3.  Accordingly, Mackay can be held personally liable for violations of the TBCC, in addition to the TCPA.  *See id.*

### b. Plaintiff sufficiently alleges TCPA claims.

#### i. Section 227(b) Violations

Turning to the substance of Plaintiff's claims, Plaintiff first alleges that eleven of Amity's calls violated § 227(b) of the TCPA.  *See* Mot. 9–10; Compl. ¶¶ 78–82.  Section 227(b) prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice" to any phone number assigned to a "cellular telephone service."

7

47 U.S.C. § 227(b)(1)(A)(iii). Section 227(b) creates a private right of action, allowing

individuals to bring suit for violations of the subsection. *Id.* § 227(b)(3).

Plaintiff argues that eleven calls placed by Amity violated § 227(b). *See generally*

Compl.; Mot. 9. Plaintiff's Complaint alleges that he did not consent to Amity's phone calls and

that "no emergency validated the purpose for these calls." *Id.* ¶ 33. Plaintiff also alleges that

each of these eleven calls began with a common, prerecorded message. *Id.* ¶¶ 38–42. These

allegations are sufficient to establish liability for Defendants under the "artificial or prerecorded

voice" provisions of the TCPA, without the need for Plaintiff to demonstrate the use of an

ATDS. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015) ("To be liable

under the 'artificial or prerecorded voice' section of the TCPA, we conclude that a defendant

must make a call and an artificial or prerecorded voice must . . . play."); *Gardner v. Navient,

LLC*, No. 24-cv-198, 2024 WL 3363016, at *4 (N.D. Tex. June 7, 2024) ("[T]he use of an ATDS

employing a random or sequential number generator is not required where a plaintiff alleges that

an artificial or prerecorded voice played."), *adopted*, 2024 WL 3362475 (July 9, 2024). Thus,

Plaintiff has adequately alleged that eleven calls placed by Amity violated § 227(b).

### ii.     Section 227(c) and 47 C.F.R. § 64.1200 Violations

Next, Plaintiff claims that all fifteen of Amity's calls also violated Federal

Communications Commission ("FCC") regulations contained at 47 C.F.R. § 64.1200(c) and

promulgated pursuant to § 227(c)(3)(F) of the TCPA.[2] *See* Mot. 10; Compl. ¶¶ 83–87. As

relevant here, these regulations state that "[n]o person or entity shall initiate any telephone

---

[2] Plaintiff, in his Motion, also references "47 U.S.C. § 227(d)(6)" in connection with this claim. Mot. 10.
But this provision of the TCPA does not appear to exist and Plaintiff offers no indication of which
provision of the TCPA he may be intending to refer to. Moreover, no claims other than those analyzed in
this Order appear in Plaintiff's Complaint. *See generally* Compl. Thus, the Court considers Plaintiff's
"§ 227(d)(6)" claim no further.

solicitation to" "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry."  47 C.F.R. § 64.1200(c)(2).  An individual or entity that violates this regulatory provision is not liable if they are able to demonstrate that they: 1) committed the violation inadvertently; 2) have implemented written procedures and training of personnel to ensure compliance with the do-not-call registry; 3) maintain records of telephone numbers it may not call; and 4) use a process to check phone numbers against the do-not-call registry a minimum of every thirty-one days.  *Id.* § 64.1200(c)(2)(i)(A)–(D).  Section 227(c) of the TCPA creates a private right of action that allows individuals who receive calls made in violation of the FCC regulations to sue for damages if they receive "more than one telephone call within any 12-month period by or on behalf of the same entity."  47 U.S.C. § 227(c)(5).

Plaintiff has adequately alleged violations of the FCC regulations here.  First, Plaintiff alleges that Defendants called him on his "personal phone that he uses for personal, family and household use," and that his phone is "not primarily used for any business purpose."  Compl. ¶ 77.  Plaintiff thus sufficiently alleges that the phone in question falls under the TCPA's definition of a residential phone line.  *See, e.g.*, *Salaiz v. VSC Operations LLC*, No. 3:23-cv-423-KC, 2024 WL 3405601, at *5 (W.D. Tex. July 10, 2024) (holding that a cell phone can constitute a residential phone for the purposes of the TCPA when a plaintiff "sufficiently allege[s] that [they used their] cell phone for residential purposes" (citation omitted)).  Further, Plaintiff alleges that he personally "registered the cell phone at issue in this case on the National-Do-Not-Call Registry on November 21, 2023," and that his registration remained active at the times of all of the phone calls.  Compl. ¶¶ 30–32.  Plaintiff then received a total of fifteen phone calls from Defendants despite registering his phone number on the registry more than thirty-one days prior. *Id.* ¶¶ 30–32, 85.  Further, all phone calls occurred within an approximate period of two

months—meaning Plaintiff received "more than one telephone call" from Amity during a twelve-month period. Compl. ¶¶ 30–60; 47 U.S.C. § 227(c)(5). Plaintiff alleges that Defendants did not operate a do-not-call policy or train their employees "on the existence and use of any do-not-call list." Compl. ¶¶ 54–55. Further, as Defendants have not answered Plaintiff's allegations or otherwise appeared in this matter, there is nothing in the record to suggest to the Court that liability for Defendants may be precluded on other grounds. *See* 47 C.F.R. § 64.1200(c)(2)(i)(A)–(D). Thus, Plaintiff sufficiently alleges violations of the FCC regulations against Defendants for which he can recover pursuant to § 227(c)(5) of the TCPA.

### c. Plaintiff sufficiently alleges TBCC claims.

Finally, Plaintiff asserts claims under Section 302.101 of the TBCC. Mot. 10; Compl. ¶¶ 88–91. This provision of Texas law provides that a "seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101. Courts have interpreted other provisions of the TBCC as creating a private right of action for violations of the TBCC's registration certificate requirement. *See, e.g.*, *Cacho v. Live Transfers, Inc.*, No. 3:23-cv-372-DCG, 2024 WL 3103324, at *5 (W.D. Tex. June 24, 2024) (holding that "[t]here is a private right of action available to enforce § 302.101," and then citing Section 302.302(b) of the Texas Business and Commerce Code), *adopted*, 2024 WL 3595780 (July 30, 2024); *Barack v. Bankroll Cap., Inc.*, No. 23-cv-615, 2024 WL 3015327, at *4 (N.D. Tex. May 30, 2024) ("Section 302.302 of the TBCC provides a private cause of action to enforce the provisions of Chapter 302, for 'a civil penalty of not more than $5,000 for each violation.'"), *adopted*, 2024 WL 3015317 (June 14, 2024) (citing Section 302.302 of the Texas Business and Commerce Code); *Auguston v. Nat'l Admin. Serv.*

*Co., LLC*, No. 21-cv-819, 2023 WL 1810397, at *8 (E.D. Tex. Jan. 11, 2023) ("While Texas Business and Commerce Code Section 302.101 itself does not provide a private right of action, Section 302.303 provides the plaintiff a private right of action to enforce violations of Section 302.101."), *adopted*, 2023 WL 1802389 (Feb. 7, 2023).

Plaintiff has also sufficiently alleged that Defendants violated the TBCC. As already established, Plaintiff has sufficiently pleaded that Defendants called him at least fifteen times. Further, Plaintiff alleges he was physically present in El Paso, Texas for all fifteen phone calls he received from Defendants, and that his cell phone number is a "Texas area code . . . telephone number." Compl. ¶¶ 67–69. Plaintiff further states that he searched the Texas Secretary of State's Telephone Solicitors Search system for Defendants and did not find an entry for them. *Id.* ¶¶ 70–72. Plaintiff's allegations, taken together, are more than sufficient to allege that Defendants violated the TBCC. *See, e.g.*, *Live Transfers*, 2024 WL 3103324, at *5 (holding that plaintiff sufficiently alleged that defendant violated TBCC's registration certificate requirement when plaintiff alleged in his complaint that he was a resident of Texas and that the defendant was not registered with the Texas Secretary of State).

### 3.    Plaintiff is entitled to damages.

Plaintiff seeks a total of $110,630.00 in damages for Defendants' violations of the TCPA and TBCC. Mot. 13. A plaintiff seeking damages under §§ 227(b) and 227(c) of the TCPA may recover their actual monetary loss or statutory damages of $500. 47 U.S.C. § 227(b)(3)(B); *id.* § 227(c)(5)(B). Additionally, if the "court finds that the defendant willfully or knowingly violated" the TCPA or associated regulations, the court "may, in its discretion, increase the amount of the award to an amount equal to not more than [three] times [the amount of statutory damages]." *Id.* § 227(b)(3)(C); *id.* § 227(c)(5)(B). The applicable provision of the TBCC

provides for a "civil penalty of not more than $5,000 for each violation." Tex. Bus. & Com. Code § 302.302(a). Here, Plaintiff seeks to recover statutory damages plus enhanced damages for Defendants' allegedly willful or knowing violations of the TCPA, as well as the maximum civil penalty under the TBCC. Mot. 13; Compl. 15–16.

Although a plaintiff's pleading can provide a sufficient basis for a court to enter default judgment as to liability, this is often not the case for damages. *See United State ex rel. M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Instead, damages must generally be proven by the submission of evidence, such as an affidavit, or through an evidentiary hearing. *See Freeman*, 605 F.2d at 857. District courts have "wide latitude" regarding whether to hold an evidentiary hearing on the issue of damages. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also* Fed. R. Civ. P. 55(b)(2)(B).

A hearing is unnecessary if "the amount claimed is a liquidated sum or one capable of mathematical calculation," *Freeman*, 605 F.2d at 857, and courts can instead determine damages based on "pleadings or information in the existing record." Daniel R. Coquillette et al., *Moore's Federal Practice* § 55.32[2][a], 55-50 (3d. 2024). Where a plaintiff seeks only the minimum statutory damages available, courts routinely make such awards based solely on review of the pleadings and without any evidence or a hearing. *Id.*; *see, e.g.*, *Live Transfers*, 2024 WL 3103324, at *5 (awarding minimum statutory damages based on allegations contained in amended complaint regarding number of times plaintiff was called by defendant); *Hunsinger v. 204S6TH LLC*, No. 21-cv-2847, 2022 WL 1110354, at *9 (N.D. Tex. Mar. 23, 2022) (citations omitted) ("Courts that have similarly awarded default judgments for TCPA claims have determined the number of phone calls based upon the allegations in the complaint *or* upon

12

additional evidence . . . ." (emphasis added)), *adopted*, 2022 WL 1102864 (N.D. Tex. Apr. 13, 2022); *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 544 (E.D. Pa. 2008) ("In default judgment cases, courts can order the minimum statutory damages without conducting a hearing.").

To be sure, the caselaw regarding the award of statutory damages at default judgment based solely on the pleadings is unclear, and courts often appear to conflate the need for an evidentiary hearing with the need for submission of at least some written evidence. *See, e.g.*, *Walker v. Koelzer*, 715 F. Supp. 3d 956, 966 (N.D. Tex. 2024) ("Normally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." (citing *Freeman*, 605 F.2d at 857)); *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F. Supp. 3d 232, 239 (M.D. La. 2022) ("A court's award of damages in a default judgment must be determined after a hearing, unless the amount claimed can be demonstrated 'by detailed affidavits establishing the necessary facts.'").  But common sense supports the view that courts can award minimum statutory damages based solely on a review of a plaintiff's pleading. Because they act as a floor to the amount of recoverable damages, a plaintiff is automatically entitled to minimum statutory damages if they can demonstrate a defendant's liability under the relevant statute.  As discussed above, to assess liability at default judgment, courts accept the plaintiff's well-pleaded allegations as true.  It would thus be incongruent to require a plaintiff to submit additional evidence to support an award of minimum statutory damages, but not for liability, when those damages flow automatically from liability.  *Cf. James*, 6 F.3d at 311. (holding that an evidentiary hearing was "superfluous" when "it would have revealed no pertinent information").

Although a court may award minimum statutory damages based on the pleadings alone, when a plaintiff seeks damages above the statutory minimum a court unequivocally requires additional evidence that supports entry of an increased damages award.  *See, e.g.*, *Arredondo v. Flexi Corp.*, No. 17-cv-4, 2017 WL 7796192, at *2 (S.D. Tex. Aug. 18, 2017) (denying enhanced damages when the plaintiff's filings did "not offer a sufficient indication" that defendant's violations were "willful and knowing").  This evidence can usually be in the form of an affidavit or other documentary evidence.  *See generally, e.g.*, *id.* (plaintiff submitted screenshots showing phone calls); *Morelia*, 126 F. Supp. 3d 809 (plaintiff submitted affidavit and evidence of auditing visit undertaken to defendant's commercial establishment).  Similarly, when a plaintiff seeks an award for costs or fees, this must also be supported by evidence. *Morelia*, 126 F. Supp. 3d at 819 (denying plaintiff's request for costs due to lack of evidence).

### a.    TCPA Damages

Plaintiff seeks damages under both §§ 227(b) and 227(c) of the TCPA.  Mot. 9–10.  A plaintiff can recover for violations of multiple subsections of the TCPA for one call.  *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105–06 (11th Cir. 2015) ("[Plaintiff] argues that the district court erred when it computed damages by treating each fax as a single violation of the Act because each fax violated two subparts of the Act, and so each fax amounted to *two* violations. We agree . . . ."); *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) ("We therefore conclude that a person may recover statutory damages . . . [under both] § 227(b)(3), and . . . § 227(c)(5) . . . ."); *Thompson v. Dealer Renewal Servs.*, No. 21-cv-467, 2021 WL 5416605, at *3 (N.D. Tex. Nov. 18, 2021) (granting default judgment and awarding damages to plaintiff under both §§ 227(b) and 227(c) of the TCPA).

14

### i.     Section 227(b) Violations

Plaintiff seeks a total of $14,500.00 in damages under section 227(b) of the TCPA, including "$1,000 for two (2) violations of 227(b)(1)(A)(iii) at $500 per call, plus $13,500 for nine (9) violations of 227(b)(1)(A)(iii) at $1,500 per call for knowing and willful violations." Mot. 3.

Although Plaintiff has submitted an affidavit in support of his Motion, it does not contain sufficient evidence for the Court to make a determination as to whether Defendants' conduct constituted a willful or knowing violation of the TCPA.  Instead, it merely recites the amount of damages that Plaintiff believes is warranted.  Aff. Support Default J. ¶ 3, ECF No. 10.  Plaintiff's Complaint contains multiple allegations regarding Defendants' conduct that he asserts supports entry of increased damages, Compl. ¶¶ 38–52, but Plaintiff's Complaint allegations do not constitute evidence that the Court can use as the basis for entry of enhanced damages.  *See Broad. Music, Inc.*, 555 F. Supp. at 544–45 (holding that because the plaintiffs "requested statutory damages in excess of the statutory minimum" the court must look to "any evidence adduced by Plaintiffs in their filings" in addition to the pleadings); *Cf. Craig v. Martin*, 49 F.4th 404, 416 (5th Cir. 2022) (reasoning, in the context of summary judgment, that "unsworn allegations [in a complaint] are not evidence").  Plaintiff is therefore only entitled to minimum statutory damages of $500 per violation.

Accordingly, because Plaintiff has sufficiently alleged that Defendants violated § 227(b) of the TCPA eleven times, the Court awards him a total of $5,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B).

### ii.     Section 227(c) Violations

Plaintiff seeks a total of $20,500.00 in damages under section 227(c) of the TCPA, including "$1,000 for two (2) violations of 227(c) at $500 per call, plus $19,500 for thirteen (13) violations of 227(c) at $1,500 per call for knowing and willful violations."  Mot. 3.

As before, Plaintiff's Affidavit in Support of Default Judgment does not contain sufficient evidence for the Court to determine whether Defendants' conduct constituted willful or knowing violations of the TCPA.  Plaintiff is therefore only entitled to minimum statutory damages of $500 per violation.

Accordingly, because Plaintiff has sufficiently alleged that Defendants called him and violated § 227(c) of the TCPA fifteen times, the Court awards him a total of $7,500.00 pursuant to 47 U.S.C. § 227(c)(5)(B).

### b.     Damages for Violation of the TBCC

Plaintiff seeks a total of $75,000.00 in damages for violations of Section 302.101 of the Texas Business and Commerce Code, made up of "fifteen (15) violations . . . at $5,000 per call."  Mot. 3.

In determining how much to award a plaintiff under this provision of the TBCC, courts in this District—including this one—have routinely awarded plaintiffs the full amount of $5,000.00 for each violation under the TBCC.  *See, e.g.*, *Live Transfers*, 2024 WL 3595780, at *2–3, 4 (adopting magistrate judge's report and recommendation awarding plaintiff $5,000.00 per violation of the TBCC); *Callier v. Tip Top Cap. Inc.*, No. 3:23-CV-437-KC, 2024 WL 1637535, at *4 (W.D. Tex. Apr. 16, 2024) (adopting magistrate judge's report and recommendation in part to award plaintiff $5,000.00 per violation of the TBCC); *Thomas v. Zenith Solar, LLC*, No. 22-cv-47, 2022 WL 17813168, at *4 (W.D. Tex. Aug. 1, 2022) (making recommendation of award

16

of $5,000.00 per violation of the TBCC).  Absent argument or authority to the contrary, the Court sees no reason to deviate from this approach here.

Accordingly, because Plaintiff has sufficiently alleged that Defendants called him and violated Section 302.101 of the Texas Business and Commerce Code fifteen times, the Court awards him a total of $75,000.00 pursuant to Section 302.302 of the Texas Business and Commerce Code.

### c.    Costs

Finally, Plaintiff seeks $405.00 in "filing fees" and $225.00 in "service fees."  Mot. 3. The federal statute governing generally recoverable costs for litigants in federal court is 28 U.S.C. § 1920.  This statute provides that recoverable costs include, among others, "[f]ees of the clerk and marshal."  But costs for private process servers are generally not recoverable under 28 U.S.C. § 1920.  *See Zastrow v. Hous. Auto M. Imports Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017) ("[T]his circuit has held that costs for private process servers [under § 1920] are not recoverable, absent exceptional circumstances.").

Plaintiff argues that "service fees" are recoverable under the Texas Business and Commerce Code, Mot. 3, which allows for recovery of "all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees."  Tex. Bus. and Com. Code § 302.302(d).  But whether fees for private process servers are recoverable under Texas law is not determinative because federal law governs the award of costs here.  The Fifth Circuit has "established a strong presumption that federal law controls costs awards for private process server fees," and has held that this approach accords with choice of law precedent under *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), and its progeny.  *See Bates Energy Oil & Gas, LLC v. Complete Oil Field Servs., LLC*, No. 5:17-

17

cv-808-RCL, 2021 WL 3137421, at *16 (W.D. Tex. Feb. 22, 2021) (collecting cases); *Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993) ("We note that several other circuits and commentators share our conclusion that federal procedural law ordinarily governs the award of costs in diversity cases."); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 689 (5th Cir. 1991) (holding that the trial court did not err in following federal as opposed to Louisiana state law regarding compensation for expert witnesses).

Because Plaintiff does not argue any "extraordinary circumstances" that would potentially necessitate recovery of private process server fees under Fifth Circuit precedent,[3] Plaintiff cannot recover for service fees. *See Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) ("[T]his court held that absent exceptional circumstances, the costs of a private process server are not recoverable . . . ."); *Cypress-Fairbanks Indep. Sch. Dist. v. Barry F. ex rel. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997) ("As there was nothing exceptional about the parties or the nature of this case, the district court should have denied these unnecessary private service costs."). Plaintiff can recover for filing fees and the Court takes judicial notice of the $405.00 filing fee paid by Plaintiff. Filing Fee Received, ECF No. 4.

Accordingly, the Court awards Plaintiff $405.00 in costs.

---

[3] As courts have noted, it is unclear the extent to which the Fifth Circuit's private process server fee exception for "exceptional circumstances" survives the Supreme Court's decision in *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334 (2019) (holding that, absent explicit legislative authorization otherwise, litigants bringing suit under federal statutes may only recover the fees and costs delineated in §§ 1821 and 1920 of Title 28 of the United States Code). *Bates Energy Oil*, 2021 WL 3137421, at *17 n.11. But because it has not been directly overruled by *Rimini Street*, lower courts in the Fifth Circuit must continue to apply it. *Id.*

18

## III.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion, ECF No. 10, is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that **DEFAULT JUDGMENT** is **ENTERED** in favor of Plaintiff Joseph Cacho, and against Defendants Amity One Debt Relief and Ariyo Mackay, jointly and severally.  Defendants **SHALL PAY** Plaintiff:

a. $5,500.00 in statutory damages for eleven violations of 47 U.S.C. § 227(b) pursuant to § 227(b)(3)(B);

b. $7,500.00 in statutory damages for fifteen violations of 47 U.S.C. § 227(c) pursuant to § 227(c)(5)(B);

c. $75,000.00 in damages for fifteen violations of Section 302.101 of the Texas Business and Commerce Code pursuant to Section 302.302 of the Texas Business and Commerce Code; and

d. $405.00 in costs of court.

In total, the Court **GRANTS** default judgment in favor of Plaintiff and against Defendants in the amount of $88,405.00.

**IT IS FURTHER ORDERED** that all monetary judgments awarded herein shall accrue post-judgment interest at the legal rate prescribed by 28 U.S.C. § 1961, calculated from the date of this Order.

The Clerk shall close the case.

**SO ORDERED.**

SIGNED this 24th day of October, 2024.

KATHLEEN  CARDONE
UNITED STATES DISTRICT JUDGE